```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

Roger Hicks

    v.                                         Civil No. 16-cv-041-LM
                                                             Opinion No. 2017 DNH 021

United States of America

**O R D E R**

Roger Hicks pleaded guilty to one count of bank robbery in this court and was sentenced to 37 months in prison. See United States v. Hicks, 14-cr-160-LM (D.N.H. May 8, 2015). Hicks now seeks relief from his sentence under 28 U.S.C. § 2255, alleging three claims of ineffective assistance of counsel. The court appointed counsel to represent him and, on January 13, 2017, held an evidentiary hearing. For the reasons that follow, the court denies Hicks's motion.

**Standard of Review**

Under § 2255, a federal prisoner may ask the court to vacate, set aside, or correct a sentence that "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). The burden of proof is on the petitioner. Wilder v. United States, 806 F.3d 653, 658 (1st Cir. 2015) (citing David v. United States, 134 F.3d 470, 474 (1st Cir. 1998)).

**Background**

On October 3, 2014, Hicks went to the Members First Credit Union in Manchester, New Hampshire and attempted to withdraw funds using several cash advance credit/debit cards. He identified himself to the bank teller as Roger Hicks. The teller attempted to process the transactions, but the cards were rejected. Hicks grew agitated and asked to see the bank manager. After speaking with the manager, Hicks tried using the cards at the ATM and, when that failed, made several calls to the debit card company. Hicks then asked the teller to attempt the transactions again. She tried multiple times, but the cards were again rejected. Hicks then handed the teller a note on the reverse side of a business card that said, "Give me cash. I have a gun." The teller gave Hicks all the money in her cash drawer, $3,477.98. The Manchester Police arrested Hicks shortly thereafter.

On January 23, 2015, Hicks pleaded guilty to one count of bank robbery in violation of 18 U.S.C. § 2113(a). See United States v. Hicks, 14-cr-160-LM. The presentence report ("PSR") calculated Hicks's criminal history category to be III. Cr.

doc. no. 18 at 10.[1]  His total offense level was 21, which included a two-level increase pursuant to U.S.S.G. § 2B3.1(b)(2)(F) because Hicks made a threat of death during the robbery (i.e. "I have a gun").  Id. at 6.  These sentencing calculations yielded a guideline range of 46-57 months.  Id. at 19.

On May 7, 2015, the court sentenced Hicks.  Hicks's trial attorney, Bjorn Lange, filed a sentencing memorandum and argued that the court should sentence Hicks to 37 months in prison.  See cr. doc. no. 14.  Attorney Lange first argued that the court should not impose the two-level threat-of-death enhancement under U.S.S.G. § 2B3.1(b)(2)(F).  He argued that due to the unusual circumstance of the robbery and the fact that the bank teller recognized Hicks as a frequent customer, his conduct would not have instilled "in a reasonable person, who is a victim of the offense, a fear of death."  Cr. doc. no. 14 at 2.  Attorney Lange argued that Hicks made no threatening or menacing gestures, and did nothing to show that he in fact possessed a firearm that he intended to use.  Id. at 3.  The government objected, noting that Hicks grew increasingly angry and

---

[1] "Cr. doc. no." refers to document numbers in the docket of the underlying criminal proceeding (14-cr-160-LM).  "Doc. no." refers to document numbers in the instant proceeding.

frustrated as his cards were declined, which made the teller feel nervous. The government also referenced the police incident report, which stated that the victim teller was "visibly upset and shaking" after the robbery. Cr. doc. no. 17-1. The court rejected the defendant's argument and applied the threat-of-death enhancement under U.S.S.G. § 2B3.1(b)(2)(F).

Second, Attorney Lange requested that the court depart horizontally from criminal history category III to II. He argued that category III overstated Hicks's criminal history. The court granted the departure, which lowered Hicks's guideline range to 41-51 months.

Finally, Attorney Lange requested that the court grant a four-month variance under 18 U.S.C. § 3553(a). Specifically, Attorney Lange argued a variance was appropriate because Hicks's PTSD and mental-health problems contributed to the commission of the robbery. Hicks was present at the World Trade Center on 9-11 and had experienced other traumatic events in his life. His PSR indicated that he had a history of PTSD and mental-health treatment, including several hospitalizations for psychiatric issues. Cr. doc. no. 18 at 15. The court granted the variance and sentenced Hicks to 37 months in prison.

On January 29, 2016, Hicks filed a § 2255 motion, claiming that Attorney Lange was ineffective for failing to request a

diminished-capacity departure under U.S.S.G. § 5K2.13.  Doc. no. 1.  The court appointed counsel to represent Hicks (doc. no. 5), but he later requested that his counsel be dismissed (doc. no. 10).  The court granted Hicks's motion and appointed substitute counsel to represent him.  On December 5, 2016, Hicks's substitute counsel filed a supplemental memorandum, arguing that Attorney Lange was ineffective for failing to request a more substantial variance under 18 U.S.C. § 3553(a) and failing to properly investigate Hicks's mental-health condition in order to further this argument.  Doc. no. 12.  On December 19, 2016, Hicks filed a petition for leave to supplement his § 2255 motion with an additional ineffective-assistance-of-counsel claim.  Doc. no. 14.  Hicks claimed that Attorney Lange was ineffective for failing to obtain the bank teller's testimony and confirm that she did not actually fear for her life or believe Hicks possessed a gun during the robbery.  According to Hicks, such testimony would have supported his sentencing argument against application of the threat-of-death enhancement.

On January 13, 2017, the court held an evidentiary hearing.  Attorney Lange testified at the hearing, and Hicks presented arguments on his three ineffective-assistance-of-counsel claims.

5

**Discussion**

In his § 2255 petition and supplemental filings, Hicks raises three ineffective-assistance-of-counsel claims. When a § 2255 petition is based on ineffective assistance of counsel, the petitioner "must demonstrate both: (1) that 'counsel's performance was deficient,' meaning that 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment'; and (2) 'that the deficient performance prejudiced the defense.'" United States v. Valerio, 676 F.3d 237, 246 (1st Cir. 2012) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)).

Under the deficiency prong, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and the petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (internal quotation marks omitted). Under the prejudice prong, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Failure to satisfy either the deficiency or

prejudice prong defeats an ineffective-assistance-of-counsel claim.  Id. at 700.

I.  First Claim: Failure to Request Diminished-Capacity Departure Under U.S.S.G. § 5K2.13

Hicks first argues that trial counsel was ineffective for failing to request a sentencing departure based on Hicks's diminished mental capacity under U.S.S.G. § 5K2.13.  Section 5K2.13 provides:

> A downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense. Similarly, if a departure is warranted under this policy statement, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.
>
> However, the court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public; or (4) the defendant has been convicted of an offense under chapter 71, 109A, 110, or 117, of title 18, United States Code.

Hicks argues that at the time of the robbery, he was suffering from a significantly diminished mental capacity due to his PTSD, which contributed to his commission of the crime. Hicks argues that he was eligible for this sentencing departure

7

because the robbery did not involve actual violence or a serious threat of violence.  Hicks claims that if Attorney Lange had requested a § 5K2.13 departure based on his PTSD, he could have received a five-level downward departure, resulting in a guideline sentence of 20 months.[2]  In support of his claim, Hicks cites a number of cases where courts found a § 5K2.13 departure appropriate.  See United States v. Risse, 83 F.3d 212, 217 (8th Cir. 1996) (affirming § 5K2.13 departure); United States v. Cantu, 12 F.3d 1506, 1516-17 (9th Cir. 1993) (remanding because the district court erred in ruling that it lacked discretion to grant a § 5K2.13 departure); United States v. Royal, 902 F. Supp. 268, 273 (D.D.C. 1995) (granting five-level downward departure); United States v. Perry, No. 4:CR94-3035, 1995 WL 137294, at *11 (D. Neb. Mar. 27, 1995) (granting five-level downward departure).  Hicks requests that the court reduce his sentence from 37 months to 20 months.

In his sentencing memorandum and at Hicks's sentencing hearing, Attorney Lange specifically cited Hicks's PTSD and mental-health condition in support of his request for a four-

---

[2] A five-level downward departure would have brought Hicks's total offense level to 16, with a guideline sentencing range of 24-30 months.  Thus, Hicks's request for a 20-month sentence is based on the adjusted offense level, plus the fourth-month variance the court granted at his sentencing hearing.

8

month variance.  In granting Attorney Lange's motion, the court noted that the robbery was "likely a result of what appears to be Mr. Hicks' undisputed PTSD diagnosis."  Cr. doc. no. 22 at 31.  The court added that Hicks's conduct was "the impulsive behavior of someone who suffers from PTSD, as you say you have, and there is nothing to indicate that this is an inaccurate diagnosis."  Id. at 32.  The court also noted that it had considered everything contained in the PSR and Attorney Lange's sentencing memorandum, both of which included references to Hicks's PTSD and mental-health issues.  Id. at 31.  Finally, the court concluded that Hicks's personal and criminal history "corroborates [Hicks's] PTSD after the tragic and traumatic events of 9-11."  Id. at 34.  Thus, the court explicitly considered Hicks's PTSD and mental-health issues when it granted the four-month variance and sentenced Hicks to 37 months.

Hicks argues that Attorney Lange should have moved for a § 5K2.13 downward departure based on Hicks's PTSD diagnosis.  However, Attorney Lange made essentially the same argument in the form of a variance request.  He argued that a lower sentence was appropriate for several reasons, including Hicks's PTSD and mental-health issues.

At the evidentiary hearing, Attorney Lange testified that he discussed a § 5K2.13 departure with Hicks, but ultimately

chose to pursue a variance because it was less restrictive than a departure. Under these circumstances, Attorney Lange was not deficient for requesting a downward variance rather than a downward departure. See United States v. Morgan, Cr. No. 12-10071-PBS, 2016 WL 526040, at *1 (D. Mass. Feb. 9, 2016) ("Presenting an argument for a variance under § 3553(a) and § 5K2.0, rather than under § 5K2.13, is not objectively unreasonable in light of the advisory nature of the Sentencing Guidelines." (citations omitted)).

Moreover, a § 5K2.13 departure is not available if the robbery involved "a serious threat of violence"[3] or the defendant's diminished capacity was "caused by the voluntary use of drugs." Here, as Attorney Lange explained, had he requested a § 5K2.13 departure, he risked focusing the court's attention on whether Hicks's reduced mental capacity was caused by his

---

[3] Hicks would not have been eligible for a § 5K2.13 departure if the court determined that "the facts and circumstances of the [robbery] indicate a need to protect the public because the offense involved . . . a serious threat of violence." Courts faced with similar facts have reached different conclusions on this issue. Compare United States v. McFadzean, No. 98 CR 754, 1999 WL 1144909, at *5 (N.D. Ill. Dec. 8, 1999) (finding no serious threat of violence where defendant handed note to teller that said "I have a gun," but had no weapon or means to harm anyone) with United States v. Anderson, 547 F.3d 831, 832 (7th Cir. 2008) (finding serious threat of violence where defendant handed note to teller that said "as you can see I have a gun," but record did not indicate whether he actually had a gun).

voluntary use of drugs. Attorney Lange testified that discovery revealed that Hicks told the police officers shortly after his arrest that he "was going to use the money to buy drugs." Attorney Lange made a strategic decision to pursue a variance, which allowed him to emphasize the mitigating facts in the case, specifically Hicks's PTSD diagnosis. And, as the record reveals, Attorney Lange was able to avoid a detailed inquiry into whether Hicks's history of substance abuse played a causal role in the bank robbery.

Additionally, Hicks has not shown a reasonable probability that a departure under § 5K2.13 would have resulted in a five-level decrease, or otherwise resulted in a sentence lower than 37 months. Because the facts here are different than the cases cited in his motion, a § 5K2.13 departure in this case may not have resulted in a five-level decrease. See U.S.S.G. § 5K2.13 ("[T]he extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.").[4] Thus, Hicks has not shown prejudice, that is, a reasonable probability that a downward departure would have resulted in a more lenient sentence.

---

[4] If, for example, the court granted a one-level § 5K2.13 departure, the low end of Hicks's guideline range would have been 37 months. If the court granted a three-level departure, the high end of his guideline range would have been 37 months.

In sum, Hicks has not satisfied either prong of the ineffective-assistance-of-counsel test. Based on the circumstances of this case, Attorney Lange's decision to request a downward variance rather than a departure was simply good lawyering. Accordingly, Hicks is not entitled to relief on his first ineffective-assistance claim.

II. Second Claim: Failure to Request Further Variance

Hicks next argues that trial counsel was ineffective for failing to request a more substantial variance under 18 U.S.C. § 3553(a) and failing to properly investigate Hicks's mental-health condition in order to further this argument.

To be clear, Attorney Lange argued that a four-month reduction was appropriate because Hicks's PTSD contributed to his commission of the robbery, and the court granted a four-month variance largely on that basis. However, Hicks argues that his mental-health condition was not sufficiently supported by documents and other evidence at sentencing. In support of this claim, Hicks points to Attorney Lange's failure to request that Hicks undergo a mental-health evaluation. Hicks argues that an evaluation could have substantiated his PTSD and supported a more substantial variance, greater than the four-month variance Attorney Lange requested at sentencing. The problem with this argument is that Hicks's PTSD was undisputed,

and the court expressly found that Hicks's PTSD warranted a downward variance.

Attorney Lange's failure to request that Hicks undergo a mental-health evaluation or further substantiate Hicks's PTSD diagnosis does not rise to the level of ineffective assistance. The PSR supported—and the government did not dispute—Hicks's PTSD diagnosis.  Thus, Attorney Lange's failure to present supporting medical evidence cannot be described as "patently unreasonable."  Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006).  Further, Attorney Lange's strategic decision to request a downward variance of four months, rather than some greater amount, was a reasonable exercise of his professional judgment. See Strickland, 466 U.S. at 689-90; Knight, 447 F.3d at 15 ("Under the first prong of Strickland, there is a strong presumption that counsel's strategy and tactics fall within the range of reasonable professional assistance, and courts should avoid second-guessing counsel's performance with the use of hindsight." (internal quotation marks omitted)).  Thus, Attorney's Lange's performance was not deficient.

Moreover, Hicks has not shown a reasonable probability that additional evidence of his undisputed PTSD diagnosis would have altered the outcome of sentencing, or that the court would have granted a more substantial variance request.  For these reasons,

13

he has not shown prejudice. Accordingly, Hicks is not entitled to relief on his second ineffective-assistance claim.

### III. Third Claim: Failure to Substantiate Threat-of-Death Enhancement Argument Under U.S.S.G. § 2B3.1(b)(2)(F)

Finally, Hicks argues that Attorney Lange was ineffective for failing to obtain the bank teller's testimony and confirm that she did not actually fear for her life or believe Hicks possessed a gun during the robbery. Hicks contends that such testimony would have supported his sentencing argument that the threat-of-death enhancement under U.S.S.G. § 2B3.1(b)(2)(F) should not apply in this case.

"Before the [threat-of-death] enhancement may be imposed, the record must support a finding that a defendant's actions and statements, taken as a whole, 'would instill in a reasonable person, who is a victim of the offense, a fear of death.'" United States v. Gray, 177 F.3d 86, 92 (1st Cir. 1999) (quoting U.S.S.G. § 2B3.1 comment. n.6). In Gray, the bank robber handed the teller a note that said, "Give me all your money or I'll start shooting." Id. at 88. The First Circuit upheld the district court's assessment of the two-level enhancement, noting that the robber's "unmistakable threat to use a lethal weapon itself puts this case well within the mainstream of death-threat scenarios." Id. at 92 (citing cases). Although the robber

never actually possessed a gun and may have been reluctant to use violence, the court concluded that the robber's conduct created an objectively dangerous situation.  Id.

At Hicks's sentencing hearing, Attorney Lange argued that Hicks's case was distinguishable from Gray.  He argued that Hicks's conduct more closely mirrored the facts in United States v. Wooten, where the Sixth Circuit reversed the district court's imposition of the threat-of-death enhancement to Wooten's bank robbery sentence.  689 F.3d 570, 579 (6th Cir. 2012).  Although Wooten told a bank teller, "I have a gun," the teller testified that he never felt threatened by Wooten.  Id. at 578-79.  The Sixth Circuit found that Wooten's nonaggressive demeanor throughout the robbery and the fact that he did not give the teller a demand note suggested that he would not have appeared objectively threatening to a reasonable teller.  Id. at 579.  The court concluded that Wooten's behavior "would not convey to a reasonable teller . . . that Wooten was prepared to use deadly force."  Id.

Here, the court considered the entire circumstances of the robbery and determined that the threat-of-death enhancement applied to Hicks's sentence.  The court stated the following:

> I've looked at the Gray and Wooten cases, and I find
> the threat of death enhancement is properly applied in
> this case.

15

> Unlike Wooten, who was calm and soft spoken the entire time, and where it was so clear to the teller the defendant had no intent to harm, here Mr. Hicks was increasingly agitated and upset. The note said I have a gun. The teller did not necessarily see him the entire time to see no gun visible. Just because she can't see a gun doesn't mean he doesn't have one from a reasonable person's perspective, and she handed him the cash upon receiving the note.
>
> I think the incident report also confirms that the officers -- at least when they talked to her about it she noticed, according to the incident report, that he was growing agitated and she became nervous as a result of that and they describe her as visibly upset and shaking after this.
>
> . . . .
>
> But with respect to the victim teller who witnessed the increasing agitation and escalation of his frustration and also was given the note, give me the cash, I have a gun, I think it could have instilled in that reasonable person a fear of death.

Cr. doc. no. 22 at 9-10.

The threat-of-death enhancement under § 2B3.1(b)(2)(F) is based on an objective standard, i.e., whether the robber's actions "would instill in a <u>reasonable person</u>, who is a victim of the offense, a fear of death." Gray, 177 F.3d at 92 (emphasis added) (citation omitted). Here, the court imposed the sentencing enhancement because of the effect Hicks's conduct would have on a reasonable person. The court concluded that Hicks's growing agitation and handwritten note, which said "I have a gun," would instill in a reasonable teller a fear of

16

death. Because application of the threat-of-death enhancement is based on an objective standard, Attorney Lange was not deficient for failing to interview the bank teller and determine her subjective state of mind during the robbery.

Additionally, while the bank teller's subjective state of mind may be relevant in determining what a reasonable person would believe, the record here indicates that the teller did fear for her life. The teller stated that she was "nervous" while Hicks was in the bank, and the police incident report describes her as "visibly upset and shaking" after the robbery. See cr. doc. no. 17-1. The teller's reaction to the robbery is wholly consistent with a fear of death. Although Attorney Lange did not interview the teller, there is no indication that her statements would have contradicted the record evidence in this case. To be sure, even if the teller testified that she did not feel threatened by Hicks's note, such testimony would be undermined by her immediate reaction to the robbery, as described in the report. Thus, Hicks has not shown a reasonable probability that the bank teller's testimony would have changed the court's decision to impose the threat-of-death enhancement under § 2B3.1(b)(2)(F). Accordingly, Hicks is not entitled to relief on his final ineffective-assistance claim.

**Conclusion**

For the foregoing reasons, Hicks's motion for relief under 28 U.S.C. § 2255 (doc. no. 1) is denied. Because Hicks has not made a substantial showing of the denial of a constitutional right, the court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Rule 11(a), Rules Governing Section 2255 Proceedings. The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

January 30, 2017

cc:   Seth R. Aframe, Esq.
      James P. O'Rourke, Jr., Esq.
      Jaye Rancourt, Esq.